IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                                            )<br>)<br>MARK HOPSON,                                )<br>)<br>            Defendant.                      )<br>) | Criminal Nos. 03-151, 05-42 |

**OPINION**

I. Introduction

Pending before the court is a motion filed by counsel on behalf of Mark Hopson ("Hopson") for immediate release from the sentence of imprisonment he is currently serving at FCI-Elkton, with attached medical records and letters of support from his sister and daughter (ECF No. 282 at Crim. No. 03-151, ECF No. 81 at Crim. No. 05-42). Hopson seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i), due to the COVID-19 virus. The government filed a response opposing the motion (ECF No. 287, ECF No. 82 at Crim. No. 05-42) and Hopson filed a reply brief (ECF No. 288, ECF No. 83 at Crim. No. 05-42). Hopson's motion is now ripe for disposition.

II. Procedural History

On May 19, 2003, a federal grand jury returned a 7-count indictment based upon Hopson's dealing in large quantities of crack cocaine between 1998 and 2002. In count 1, Hopson was charged with conspiracy to distribute and conspiracy to possess with intent to distribute 50 or more grams of crack cocaine from 1998 through 2002, in violation of 21 U.S.C.

1

§ 846.  In counts 2-6, defendant was charged (along with his mother, co-defendant Sarah Hopson) with conducting transactions with the proceeds of the illegal drug trafficking.  In count 7, defendant was charged with a violation of 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm.

On October 5, 2004, the government filed an information pursuant to 21 U.S.C. § 851 noting two prior drug felony offenses for which Hopson had been convicted.  (ECF No. 106.)  If convicted, Hopson faced a statutory mandatory sentence of life imprisonment.  (ECF No. 273-2 at 36-37).

A jury trial was set for April 2005. On February 7, 2005, the government filed a complaint against Hopson charging him with a violation of 18 U.S.C. § 1512(a)(2)(B)(i), for tampering with a witness for the upcoming trial by the use of physical force.  (Crim. No. 05-42, ECF No. 1.)  A grand jury indicted Hopson on this charge on March 1, 2005.  (Crim. No. 05-42, ECF No. 12.)

On the eve of trial on April 8, 2005, the parties reached a plea agreement.  Hopson pleaded guilty to counts 1 and 2 of the indictment at Criminal No. 03-151.  (ECF Nos. 138, 139.) Hopson acknowledged that count 1 (conspiracy to distribute 50 grams or more of cocaine base) carried a mandatory minimum penalty of twenty years of imprisonment.  As part of the agreement, the government agreed to dismiss counts 3-7 at Criminal No. 03-151 and filed an amended information charging Hopson with only one prior drug felony conviction, as opposed to two.[1]  (ECF No. 137.)  During the plea hearing, defendant agreed with the government's summary of what he did and the court accepted his guilty plea.  (ECF No. 273-1 at 40.)

---

[1] The amended § 851 information was beneficial to defendant because it reduced the statutory mandatory minimum sentence from life imprisonment to twenty years imprisonment. (ECF No. 273-2 at 36-37.)

Under the plea agreement, defendant waived his rights to appeal his conviction and to collaterally attack his sentence, subject to limited exceptions. (Id. at 20-21.) Hopson subsequently attempted to withdraw his guilty plea on the ground that it was not knowing and voluntary, but after multiple hearings the court denied his motion. (ECF No. 177). The court issued its Tentative Findings on March 8, 2006, finding Hopson was a career offender by reason of his two prior felony convictions. (ECF No. 176.). The guideline range, however, was driven by the base offense level for the amount of crack cocaine plus enhancements for possession of a firearm and obstruction of justice.

On June 13, 2006, Hopson pleaded guilty to obstruction of justice at Criminal No. 05-42 and all charges were consolidated for sentencing, which occurred immediately following the change of plea. Hopson challenged the quantity of crack cocaine attributed to him. After considering testimony from the government, the court found that Hopson was responsible for more than 1.5 kilograms of crack cocaine. (ECF No. 273-2 at 47-55). The court commented that the record could have supported a greater amount, because $90,000 in laundered proceeds corresponded to more than two or perhaps three kilograms of crack. (ECF No. 273-2 at 54).

The court sentenced Hopson at count 1 of the indictment at Criminal No. 03-151 to a term of imprisonment of 360 months, to be followed by a ten-year term of supervised release, and to a concurrent term of imprisonment of 240 months at count 2 of that same indictment. (ECF Nos. 182, 183.) At Criminal No. 05-42, Hopson was sentenced to a term of imprisonment of 240 months to concurrently run with the sentence imposed at Criminal No. 03-151. (Crim. No. 05-42, ECF Nos. 56, 57.)

On October 9, 2007, the United States Court of Appeals for the Third Circuit affirmed the convictions and sentences imposed by this court. (Crim. No. 03-151, ECF No. 238, 239; Crim.

No. 05-41, ECF No. 70.)  In particular, the court of appeals held that Hopson was properly classified as a career offender.

On October 13, 2016, the court granted a motion to reduce Hopson's sentence pursuant to Amendment 782, over the government's objection, and resentenced him to a term of imprisonment of 292 months, which was the low end of the advisory guideline range based on his career offender status.  This represented a sentence reduction of 68 months.

On September 19, 2019 (approximately one year ago), the court issued an opinion and order denying Hopson's request for a sentence reduction under § 404 of the First Step Act.  The court assumed that Hopson was eligible for relief, but exercised its discretion to not reduce his sentence after reviewing the § 3553(a) sentencing factors.

Hopson has been detained since February 2005.  His projected release date is November 27, 2025.  https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited September 29, 2020).

III. Exhaustion

On May 7, 2020, Hopson submitted a request for compassionate release to the warden at FCI-Elkton.  He filed his motion in this court on August 14, 2020 (more than 30 days later).  The government conceded that Hopson exhausted his administrative remedies, but opposes his release on the merits.

On August 31, 2020, the Court of Appeals designated its decision in *United States v. Harris*, No. 20-1723, -- F.3d --, 2020 WL 5198870 (3d Cir. 2020), as precedential.  In *Harris*, the court  held that a defendant may file a compassionate release motion with the court 30 days after the warden receives his initial request.  *Id.*  Based on *Harris*, because Hopson filed his

4

motion in this court more than 30 days after the warden received his initial request, he exhausted his administrative remedies and his motion for compassionate release will be resolved on the merits.

IV. Legal Standard

The First Step Act provides, in relevant part, that the court may not modify a term of imprisonment once it has been imposed, unless:

> (A)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a)** to the extent that they are applicable, **if** it finds that—
>
> (i)   **extraordinary and compelling reasons** warrant such a reduction; **or**
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, **and** a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> **and** that such a reduction is consistent with applicable **policy statements** issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).  Under the statute, the court must address three considerations:  (1) the § 3553(a) factors; (2) whether extraordinary and compelling reasons exist; and (3) whether a reduction is consistent with policy statements of the Sentencing Commission.

Hopson bears the burden of proof by a preponderance of the evidence. *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) ("As the party

seeking relief and with no statutory guidance otherwise, a defendant bears the burden of proof in motions for compassionate release.") (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005)); *United States v. Rodrigues*, No. 16-CR-00529-DKW-1, 2020 WL 5634310, at *1 (D. Haw. Sept. 21, 2020). Each of the three considerations will be addressed.

V. Discussion

A. Section 3553(a) Factors

The statute states that a court does not evaluate whether extraordinary and compelling reasons justify a sentence reduction until "**after**" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a). The court has reviewed the § 3553(a) factors with respect to Hopson on several occasions: (1) in June 2006, when imposing the original sentence on Hopson; (2) in October 2016, when reducing Hopson's sentence pursuant to Amendment 782; and (3) most recently, in September 2019, when denying his First Step Act motion. In the September 2019 opinion, the court explained, in relevant part:

> The court will decline to exercise its discretion to reduce the sentence imposed upon Hopson. The court thoroughly discussed the § 3553(a) factors in imposing Hopson's original sentence. The court stated, in relevant part: (1) Hopson committed extremely serious crimes, devastating to the community, involving multi-kilos of crack cocaine[]; (2) his history and characteristics showed lifelong interactions with the criminal justice system; (3) a prison term of 360 months was warranted in order to reflect the seriousness of the offense, promote respect for the law and provide just punishment; (4) the substantial sentence being ordered would protect the public from further crimes by Hopson; (5) the court selected a sentence within the guideline range, although at the lowest end, and could have imposed life imprisonment; and (6) the court chose not to deviate from the guideline range because it would create an unwarranted disparity with other similarly-situated defendants. The court stated that its sentence addressed the goals of punishment, rehabilitation and deterrence. (ECF No. 273-2 at 72-76). The court adheres to its application of the § 3553(a) factors in this case.

ECF No. 278 at 9. Of particular concern to the court was Hopson's conduct of beating a witness

who agreed to testify against him with a golf club. *Id*. at 9 n. 3. The court also reasoned that Hopson's sentence was reduced substantially in 2016 (by 68 months, from 360 months to 292 months), for the reasons stated by the court at that time, including his post-sentence rehabilitation. *Id.*

In his pending motion, Hopson does not point to any factors that the court did not consider in 2019.[2] The court will consider Hopson's continuing post-sentence rehabilitation. *See United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020) (court's review of the § 3553(a) factors must consider the "most up-to-date picture" of the defendant's "history and characteristics," including evidence of rehabilitation). The court, however, has already given great weight to Hopson's post-sentence rehabilitative efforts and commented:

> While his active participation in educational and vocational training is laudable and the court encourages him to continue his training, those efforts were recognized in reducing his sentence in 2016 and are not sufficient to outweigh the other sentencing considerations. In light of the First Step Act, consideration of the § 3553(a) factors and Hopson' progress while incarcerated, a reduction in Hopson' term of imprisonment and term of supervised release is not warranted.

ECF No. 278 at 10; ECF No. 267 ("The Inmate Skills Development Plan indicates that defendant's conduct has been exemplary while incarcerated."). In the pending motion, Hopson seeks a term of imprisonment well below the plea agreement, and far less than the statutory mandatory minimum of 20 years imprisonment. In fact, Hopson would be facing a statutory mandatory term of life imprisonment, but for the revised § 851 information the government agreed to file as part of the plea agreement.

Ultimately, the court concludes, after reexamining the § 3553(a) factors, that a further

---

[2] Hopson reiterates his contention that his advisory guideline range is now lower. The court considered and rejected this argument. ECF No. 278 at 9-10.

reduction of Hopson' term of imprisonment would not be appropriate to accomplish the purposes of sentencing.

B.  Extraordinary and compelling reasons

Hopson cites two related reasons for compassionate release:  (1) the outbreak of COVID-19 at FCI-Elkton; and (2) the risk factors of his age (49), medical conditions and race.  The court will address each of these contentions.

1.  Outbreak at FCI-Elkton

The court takes judicial notice of the evidentiary record developed recently in *United States v. Grasha*, No. 18-325, 2020 WL 5747829 (W.D. Pa. Sept. 24, 2020):

> Sarah Dees, the health services administrator at FCI-Elkton, testified credibly at the hearing.  She agreed that in March and April 2020 (shortly after Hopson reported) a high number of inmates tested positive and had severe health conditions related to the COVID-19 virus.  In total, beginning in March 2020 to the present, there have been 950 positive tests for the COVID-19 virus among inmates at FCI-Elkton. Tr. at 79.  At its peak, 50 inmates were in the hospital and 9 inmates died from the COVID-19 virus. Tr. at 54, 81.  The last inmate death occurred on May 7, 2020. Tr. at 98.  It has been months (more than 60 days) since any inmate was sent to the hospital due to the COVID-19 virus. Tr. at 96-97.  The inmates currently hospitalized were part of the initial group sent to the hospital in March and April 2020 and have remained hospitalized since that time. Tr. at 96.
>
> Ms. Dees explained that FCI-Elkton implemented numerous measures to combat the pandemic in accordance with CDC guidance, including surveillance testing of all inmates during the initial outbreak in March and April 2020. Tr. at 55.  Ninety percent of the inmates were placed in either isolation or quarantine. Tr. at 55.  FCI-Elkton requires handwashing, wearing masks and social distancing. Tr. at 57-59.
>
> Each inmate is confined to a cohort.[3]  Each cohort contains approximately 150 inmates who are housed in a unit separate from other cohorts. Tr. at 83.  At

---

[3] The government defines a cohort as "a group of persons with a similar condition grouped or housed together for observation over a period of time." *Nat'l Immigration Project of Nat'l Lawyers Guild v. Exec. Office of Immigration Review*, No. 1:20-CV-00852 (CJN), 2020 WL 2026971, at *2 (D.D.C. Apr. 28, 2020) (citing ICE Pandemic Response at 4 n.3).

>  FCI-Elkton, there is movement within a cohort, but an inmate does not have any contact with persons in another cohort. Tr. at 101. The cohorts obtain their food at separate times and the facility is cleaned between each cohort going to the dining room. Tr. at 101. Cohorts receive educational programming and recreate at separate times from other cohorts. Tr. at 101.
>
>  Currently, only 5 of the approximately 2500 inmates at FCI-Elkton are positive for the COVID-19 virus, and they are in isolation. Tr. at 57. *See* bop.gov/coronavirus/index.jsp (last visited September 15, 2020) (current COVID infections are 5 inmates, 2 staff). Those 5 inmates were asymptomatic and were subjected to a routine COVID-19 virus test prior to their step down from the facility. Tr. at 102.

*Id.* at *3.

There is no information in the record about whether Hopson is currently being exposed to COVID-19. The court concludes that the current status of the COVID-19 pandemic at FCI-Elkton does not arise to an extraordinary and compelling reason for release. *Accord United States v. Thomason*, No. 19-CR-05, 2020 WL 4915833, at *2 (D. Minn. Aug. 21, 2020) ("FCI-Elkton was the site of a significant COVID-19 outbreak during which nine inmates died and has since been the subject of extensive litigation, but the situation there has improved.").

### 2. Risk Factors

Hopson cites the following risk factors for the COVID-19 virus as a basis for compassionate release: (1) age; (2) high cholesterol; and (3) being African-American. The medical records attached to Hopson's motion reflect that on April 3, 2020, he was sent to isolation for suspected COVID-19. On April 13, 2020, he was diagnosed with pneumonia and placed back in isolation. On April 20, 2020, Hopson was released to post-isolation and reported feeling well, "with full resolution of symptoms." (ECF No. 282-3). In Hopson's request to the warden for compassionate release, he explained that he was quarantined for a total of 29 days; he was not tested for COVID-19; and he "could have easily been one of the persons who were

asymptomatic for the coronavirus." (ECF No. 282-5).[4]

### a. Age

Hopson argues that his age (49) makes him more vulnerable to the COVID-19 virus. The CDC reports that the risk for severe illness from COVID-19 increases with age. People in their 50s are at higher risk than people in their 40s; people in their 60s and 70s are at increased risk; with the greatest risk for severe illness from COVID-19 among those aged 85 or older. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html#:~:text=Risk%20for%20Severe%20Illness%20Increases%20with%20Age&text=The%20greatest%20risk%20for%20severe,as%20having%20underlying%20medical%20conditions (last visited Sept. 29, 2020). Eighty percent of deaths from COVID-19 have been 65 or older. Only 3.2% of deaths were ages 40-49. https://covid.cdc.gov/covid-data-tracker/#demographics (last visited Sept. 29, 2020). Hopson's age does not constitute an extraordinary and compelling reason for compassionate release.

### b. High Cholesterol

Hopson states that he has a history of high cholesterol which is treated with Atorvastatin (ECF No. 282 at 8). The CDC does not list high cholesterol as a factor that does place, or might place, a person at increased risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 30, 2020). On this record, Hopson's high cholesterol, which is being treated by medication, does not constitute an extraordinary and compelling reason for

---

[4] To the extent that Hopson already contracted COVID-19, and was either asymptomatic or fully recovered, that fact does not weigh in favor of compassionate release. *United States v. Hilts*, No. CR 11-133, 2020 WL 4450373 at *2 (W.D. Pa. Aug. 3, 2020) (citations omitted) (denying compassionate release to inmate who tested positive for COVID-19 and recovered, reasoning that risk of reinfection was minimized).

compassionate release.

        c.  Race

Hopson points to his race as a basis for release because African-Americans are more likely to be infected by COVID-19. The CDC reports that 20.9% of COVID-19 deaths have been black, non-Hispanic. https://covid.cdc.gov/covid-data-tracker/#demographics (last visited Sept. 30, 2020). The CDC notes that: "Race and ethnicity are risk markers for other underlying conditions that impact health — including socioeconomic status, access to health care, and increased exposure to the virus due to occupation (e.g., frontline, essential, and critical infrastructure workers)." https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited Sept. 29, 2020). In *United States v. Green*, No. CR 05-205, 2020 WL 3642860 (W.D. Pa. July 6, 2020), the court stated:

> Current data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths. It is unclear, however, whether race is an independent risk factor or whether the adverse outcomes are caused by other factors such as living conditions (such as population density), work conditions (including service in essential industries), lack of access to health care or the prevalence of other underlying medical conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited June 23, 2020).

*Id*. at *4. The court concludes that Hopson's race does not constitute an extraordinary and compelling reason for compassionate release.

In sum, the current status of the COVID-19 outbreak at FCI-Elkton and Hopson's risk factors of age, race and medical conditions, considered alone or together, do not constitute an extraordinary and compelling reason for compassionate release.

    C.    Sentencing Commission Policies

The statute requires the court to consider the Sentencing Commission policy on

compassionate release set forth at U.S.S.G. §1B1.13.  Pursuant to the Guidelines Manual, the court may reduce a sentence if:

> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) **The defendant is not a danger to the safety of any other person or to the community**, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

(Emphasis added).

The term "Extraordinary and Compelling Reasons" is defined in U.S.S.G. § 1B1.13, Application Note 1:

> (A) **Medical Condition of the Defendant**.--
>    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>    (ii) The defendant is--
>       (I) suffering from a serious physical or medical condition,
>       (II) suffering from a serious functional or cognitive impairment, or
>       (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (B) **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> (C) **Family Circumstances**.--
>    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (D) **Other Reasons**.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Hopson does not fall within the Medical Condition prong because there is no evidence that his ability to provide self-care within FCI-Elkton is substantially diminished. He does not qualify under the Age prong and the Family Circumstances prong is not applicable. He, therefore, must fit into the "other reasons" prong. The court recognizes that U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act, and that the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce defendant's sentence). For the same reasons discussed above in part IV(B) of this opinion, the court concludes that Hopson did not demonstrate other extraordinary and compelling reasons for compassionate release.

The government emphasizes the policy consideration about danger to the community. The government argues that despite his rehabilitative efforts, Hopson remains a danger to the community based on his lifelong involvement in crime, the effects of his crack cocaine distribution, and his assault on a witness with a golf club. The government emphasizes that he received a large downward variance.[5]

The "danger to the community" policy is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant." As discussed in part V(A) of this opinion, the court determined that a sentence of 292 months was sufficient, but no greater than necessary, to accomplish that purpose. The court adheres to that

---

[5] The government suggests that Hopson may not abide by social distancing and COVID-19 protection measures, but the court rejects this argument as speculative.

determination.

V. Conclusion

The court is sympathetic to Hopson's concerns about being exposed to COVID-19 at FCI-Elkton. Speculation concerning possible future conditions does not constitute a "compelling reason" for release. In other words, his current arguments for release do not outweigh the factors considered by the court in imposing his original sentence. Hopson's post-sentence rehabilitation, which the court again recognizes and applauds, was already given great weight in substantially reducing his sentence by 68 months. In accordance with the foregoing discussion, Hopson's motion for compassionate release (ECF No. 282 at Crim. No. 03-151, ECF No. 81 at Crim. No. 05-42) will be DENIED without prejudice to reassert that kind of motion if his medical conditions change or the status of the COVID-19 outbreak at FCI-Elkton changes.

An appropriate order will be entered.

Dated:  October 21, 2020.

/s/ Robert J. Colville
Robert J. Colville
United States District Judge

Cc: counsel of record